An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1128

Filed 5 August 2026

Buncombe County, No. 21JT000187-100

IN THE MATTER OF: A.D.M.J., a minor child.

Appeals by Respondent-Mother and Respondent-Father from order entered 8 September 2025 by Judge Ward D. Scott in Buncombe County District Court. Heard in the Court of Appeals 21 July 2026.

*Parent Defender Annick Lenoir-Peek, by Assistant Parent Defender Jacky L. Brammer, for Respondent-Father.*

*Sean P. Vitrano, for Respondent-Mother.*

*Matthew J. Putnam, for Petitioner Buncombe County Department of Health and Human Services.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Daniel F.E. Smith, for the Guardian ad Litem.*

PER CURIAM.

Respondents appeal from order terminating parental rights finding it in the best interests of the minor child Adam[1] due to neglect. Respondent-Father argues

---

[1] The parties stipulate that the juvenile at issue in the instant case be referred to by this pseudonym to protect his privacy.

that the court lacked current evidence about his status and evidence from the guardian ad litem about the child's circumstances and therefore could not adjudicate termination grounds or best interests. Respondent-Mother argues that the court erred in finding grounds to terminate her parental rights due to neglect, willfully leaving Adam in foster care, and willfully failing to pay a reasonable portion of the costs for his care. For the following reasons, we affirm the court's order.

## I.     Introduction

On 27 May 2021, Adam was born four months prematurely, weighing less than one pound. At birth, his cord toxicity test was positive for cocaine, THC, and benzodiazepine, which was prescribed to Mother. Mother tested positive for cocaine and THC upon admission to the hospital, but at first she denied abusing cocaine, claiming her marijuana was "laced." She later admitted to taking cocaine, claiming she could not take her mental health medications during her pregnancy. She has several mental health diagnoses, including PTSD, anxiety, depression, and schizophrenia. Father, who was cohabiting with Mother although they were not married, admitted to use of marijuana and a prior history of cocaine use. Adam was placed in the neonatal intensive care unit and a Child Protective Services ("CPS") report was forwarded to the Buncombe County Department of Health and Human Services ("the Department").

On 13 September 2021, the Department filed a juvenile petition to obtain non-secure custody of Adam due to neglect. Adam was still hospitalized, and the

Department reported that Mother and Father had inconsistent contact with both the hospital and the social worker, visiting only intermittently with Adam and failing to meet with the social worker to discuss the safety plan. Hospital staff reported that both parents had difficulty caring for the child during visits, because they would arrive smelling of marijuana and then fall asleep, even during feedings or while Adam screamed and cried.

The Department had concerns about their abilities to care for Adam, particularly because it was likely he would be discharged with an oxygen tube. Father had already declined to participate in a scheduled parenting class. The parents had a physical altercation on or about 30 August 2021 and were both criminally charged, but the charges were later dropped. Hospital staff even reported arguing while they cared for the minor child, and Father reported to staff that Mother had hit him in the transition room at the hospital. Both parents' contact with Adam was limited to supervised visitation. The court ordered that the child be placed in the Department's custody.

The Department recommended that Mother complete a Comprehensive Clinical Assessment, submit to random drug screening, and engage in parenting classes, medication management, and domestic violence services. The Department recommended that Father complete a Comprehensive Clinical Assessment and submit to random drug screenings. Both parents were expected to maintain stable

housing and exhibit the ability to take care of Adam financially. Father was legally established as Adam's biological father following DNA paternity testing.

On 29 October 2021, the Department established that Father had no reported history of mental health problems and that there was no need for him to engage in mental health services. On 7 February 2022, he notified the Department that he had started a new job as a truck driver, and as of 2 March 2022, he had not returned to North Carolina or asked the Department how Adam was doing.

In December 2021, Mother completed a clinical assessment with NC Brookhaven Behavioral Health. She was diagnosed with Schizoaffective Disorder, Unspecified Trauma and Stressor Related Disorder, Stimulant Use Disorder, and Cannabis Use Disorder. The evaluator noted that Mother's living environment made it difficult to abstain from substance use and that she had difficulty adhering to her mental health prescriptions. On 18 January 2023, the court appointed a Rule 17 guardian ad litem for Mother. The court found that she had previously tested positive for methamphetamine, cocaine, fentanyl, and marijuana, and had been hospitalized repeatedly since 2017, that she reported multiple identities, auditory hallucinations, paranoia, and suicidal and homicidal thoughts, and that she had not been taking her medications for over six months. The court later found that she did not understand the purpose of the juvenile proceedings or the roles of the parties and was unable to meaningfully participate in her defense.

By the time he was 21 months old, Adam had both eye and tongue surgery and had been hospitalized for aspiration. Adam requires significant ongoing health care due to his diagnosis of Li-Fraumeni Syndrome, which carries a high risk of childhood and adult-onset cancer. He requires regular doctor visits at least six times annually until age 18. Because of his chronic lung condition, he cannot attend daycare or be placed with large groups of children, and he requires a full-time caretaker capable of keeping his medical appointments and communication with physicians.

By 22 March 2023, the Department reported that neither parent was visiting with Adam consistently, and that Adam's breathing was affected by visits with both parents, due to Father's cigarette smoking and Mother repeatedly spraying perfume or smelling of marijuana. Following one visit, there was a coin in Adam's mouth. Adam was adjudicated a neglected juvenile on 22 March 2023. The primary plan was set as adoption.

On 20 December 2023, the Department petitioned to terminate both Mother's and Father's parental rights. The petition alleged that neither parent had made satisfactory progress in addressing the issues that initially required the Department to take nonsecure custody or improved their ability to appropriately care for Adam. The court alleged that three grounds existed to terminate both parent's rights pursuant to N.C.G.S. § 7B-111(a): high likelihood of future neglect, willfully leaving the child in placement outside the home for more than 12 months without showing reasonable progress under the circumstances in correcting the conditions leading to

the juvenile's removal, and failure to pay a reasonable portion of the cost of the child's care despite the physical and financial ability to do so. In December 2023, Mother gave birth to another child, who passed away at about 12 weeks.

Social worker Karoline Narron ("Ms. Narron") testified that although Mother participated in drug abuse treatment, including detox, she continued to use substances, including methamphetamine, and test positive for substances. She testified that Mother completed domestic violence services and detox only after the Department's TPR petition, before which she had made "no significant progress." She testified that Mother had not attended any of Adam's doctor's appointments in the previous year and attended only six out of her 22 most recent scheduled visits. She testified that Father did not maintain contact with the Department, set up visitations, or offer anything towards Adam's support, and had not visited him in at least ten months. She testified that he failed to complete substance abuse treatment, a clinical assessment, domestic violence services, or maintain a consistent residence.

Mother testified and admitted to using marijuana and methamphetamine, the latter as recently as the week of her testimony. She said she had been missing visitations because "it's just an unnecessary hassle" to wake up in time to take the bus. She testified that she was still in a relationship with Father although they did not live together.

The court found that Mother made "little, or no, progress" in her case plan, citing her failure to produce a single negative drug screen, failure to consistently visit

Adam or "exhibit the level of effort and responsibility typical of a parent seeking to maintain a relationship with her child[,]" and "lack of understanding of the scope of parenting this child." The court found that Father had no safe or stable housing and failed to comply with drug screens, complete domestic violence services, or visit the child. The court found that neither parent had either made progress in "improving their ability to safely and appropriately parent the minor child" or "taken any opportunity to seize the mantle of parenthood." Accordingly, neither parent had "addressed the neglect of the juvenile in any way" and both "have done nothing to change the conditions that existed when the child came into custody. Accordingly, the court concluded based on clear and convincing evidence that all three grounds to terminate parental rights alleged in the Department's petition existed as to both parents.

As to best interests, Ms. Narron testified that Adam's foster parents indicated the desire to adopt him and had been meeting his serious medical needs. Adam's foster mother testified that he had night terrors following visits with Mother. The court found that Adam had been placed with his foster parents since 13 September 2021, that the likelihood of adoption was excellent, and that the termination of parental rights would allow the primary plan of adoption to move forward. The court found that the bond with his foster parents was very strong, as he has "known no other home" and "has progressed medically and developmentally better than expected due to their diligent care." The court found that his bond with

Father was "non-existent[,]" that Father has "abandoned the minor child[,]" and that his bond with Mother was "moderate" but that she had failed to attend visits or doctors' appointments or refrain from wearing strong smells around the child despite being asked not to. The court concluded that it was in the best interests of the child to terminate the parental rights of both parents. Both parents issued notice of appeal.

## II.   Discussion

### A.   Father's Parental Rights

As to the findings that supported the court's conclusions that grounds existed to terminate his parental rights, Father argues that several factual findings were not supported by current evidence through the date of the termination hearing. Specifically, Father challenges the findings of paragraphs #38, #39, #40, and #41: that he lacked safe and stable housing, failed to comply with recent drug screens, had not completed domestic violence services, had not visited Adam, had not attended his doctors' appointments, had not contacted the Department or sent anything to Adam, and that there would be a substantial likelihood of future neglect.

"The standard of review for an order terminating parental rights is whether the findings of fact are supported by clear, cogent and convincing evidence and whether the conclusions of law are supported by the findings of fact." *In re L.C.R.*, 226 N.C. App. 249, 250 (2013) (citing *In re Clark*, 72 N.C. App. 118, 124 (1984)); *see also* N.C.G.S. § 7B-1111(b). The trial court's factual findings are conclusive on appeal if sufficiently clear, cogent, and convincing evidence supported them, even if the

evidence might sustain findings to the contrary. *In re A.N.H.*, 381 N.C. 30, 34 (2022). If any finding of fact is left unchallenged, we deem it supported by competent evidence, and it is binding on appeal. *Id.*

Evidence as to these grounds was indeed presented at trial. We discuss each paragraph of factual findings in sequence. As to the finding that Father lacked stable housing, Ms. Narron testified at trial that when she last spoke to Father, he was couch surfing, which she understood as an admission to "not having a consistent residence" and that he was "staying with people whenever the opportunity presented itself." Asked about the current status of his drug issues, she testified that while he continued to deny abusing substances, the Department ordered drug tests with which he had not complied.

Unchallenged findings of fact established that domestic violence incidents occurred in the weeks before the Department took nonsecure custody of the child. Ms. Narron testified that Father's case plan included domestic violence classes, but she confirmed that he never provided information that he had completed such services. She explained that his failure to complete his initial comprehensive clinical assessment prevented the County's providers from making any recommendation as to the appropriate classes.

As to the findings that he had not visited Adam since June 2024 and that his failure to regularly contact either the child or the Department was ongoing, Ms. Narron provided ample testimony during the termination hearings over two separate

occasions. She twice testified that his last visit was in June 2024. She twice testified that he was not contacting Adam or the Department or sending anything for the child. As to the findings that Father failed overall to make progress to improve his ability to parent safely or change the conditions that led to Adam's neglect, the court made ample unchallenged findings of fact to support this, and these unchallenged findings overwhelmingly correspond with testimony at trial from Ms. Narron, which the court found "credible and relevant to these proceedings" and a proper basis for its findings. Accordingly, there was sufficiently clear, cogent, and convincing evidence to support the findings to which Father objects on appeal.

Father argues at length that the evidence heard by the court was not current, and therefore the court was unable to make findings on the child's best interests. He relied heavily on *In re Z.G.J.*, 378 N.C. 500 (2021), which is easily distinguishable because the only evidence the County offered at adjudication in that case was a social worker's testimony adopting the termination petition, which was over a year old. *In re Z.G.J.*, 378 N.C. at 509. This was indeed improper where the court must consider, in evaluating either future neglect or reasonable progress, evidence leading up to the time of the termination hearing. *See In re R.L.D.*, 375 N.C. 838, 841 (2020), *accord In re J.M.J.-J.*, 374 N.C. 553, 556 (2020); *see also In re J.S.*, 374 N.C. 811, 815 (2020). But Ms. Narron offered testimony relating the Department's knowledge about Father's circumstances at the time of the termination hearings. The record also included extensive written evidence corroborating Ms. Narron's testimony that

Father's engagement with the Department and with Adam was either negligible and non-existent, including throughout the period between the Department's petition and the termination hearing dates. Accordingly, this argument fails, and we conclude that the court heard sufficient evidence to reach the factual findings Father contests on appeal.

"[W]hen a termination of parental rights is based upon a determination of neglect, if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." *In re J.M.J.-J.*, 374 N.C. at 556. The determination of future neglect requires consideration "of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *Id.* "This Court reviews de novo the issue of whether a trial court's adjudicatory findings of fact support its conclusion of law that grounds existed to terminate parental rights." *In re T.M.L.*, 377 N.C. 369, 375 (2021). The evidence at trial was more than sufficient to show that Father refused to engage in his case plan or show the requisite interest in Adam's health, safety, and well-being. The court's unchallenged findings, alongside the challenged findings which we approve for the above reasons, were therefore adequate to support its conclusion that repeated neglect was likely. Accordingly, the court correctly concluded that at least one ground existed sufficient to terminate Father's parental rights. Therefore, we affirm the court's order terminating his parental rights.

B.      Mother's Parental Rights

On appeal, Mother argues that the court erred in making both its findings as to future neglect in paragraphs #37 and #41 and its conclusions and findings in paragraph #3 of the subsequent section. The first paragraph sets out the following findings of fact: that Mother has made little or no progress to addressing the initial issues, as evidenced by her continued positive drug screens, admitted drug use, "lack of engagement in visits, and lack of understanding of the scope of parenting this child[,]" which would indicate a high likelihood of repeated future neglect. The second finds that Mother made no progress on improving either her ability to "safely and appropriately parent" Adam or her status as a parent, not having "taken any opportunity to seize the mantle of parenthood" or address the initial neglect or change the conditions that brought it about, which would likely lead to future neglect. The last concludes that a likelihood of future neglect is high, due to the failure to correct improper conditions or fully comply with the recommendations of the court and the Department and her continual engagement in conduct not in Adam's best interests.

"A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.S.E.*, 378 N.C. 40, 48 (2021) (quotation marks and citations omitted). It is unchallenged that Mother's drug abuse was a primary initial reason for Adam entering the Department's custody. Testimony by Ms. Narron, Mother's own admissions before the court during the termination hearings, and admitted drug screens constituted clear, cogent, and convincing evidence that Mother had failed to make progress in her case plan on this issue. The court found,

based upon this evidence, that Mother had never provided a single clean drug screen throughout the pendency of this case, and recognized that she failed to bring about any change in circumstances sufficient to suggest that she made any improvement on the issue, despite the Department's repeated and consistent efforts and her decision to enter a detox program.

Moreover, it is unchallenged that Adam has significant health challenges "requiring consistent, informed care." Nevertheless, Mother failed to complete any parenting classes. She also attended only six of the 22 offered visits between the Department's petition and the termination hearings. The court found Mother "reported that taking the bus to see her child is a hassle, as she must wake two hours earlier than usual." Indeed, Mother herself provided much of the clear, cogent, and convincing evidence that she had failed to appreciate that Adam requires a standard of parenting that would obligate her to commit to a serious program of self-improvement.

That Mother made some limited progress in other aspects of her case plan does not constitute sufficient progress to correct the initial neglectful conditions. Her ongoing mental health issues, consistent drug use and admission to taking methamphetamine the week of her testimony, and underwhelming interest in visiting her child all supported the trial court's determinations that future neglect was likely and that she had failed to make reasonable progress under the circumstances. The facts and testimony presented on these issues at the termination

hearings sufficed for the court to conclude that she showed a continued failure to successfully comply with the court's requirements.

Accordingly, there was sufficient evidence for the court to find that future neglect was highly likely and that she failed to make reasonable progress in her case plan, and it did not err in concluding that these grounds existed to terminate her parental rights. Because there were adequate grounds to terminate her parental rights under at least one factor pursuant to § 7B-1111(a), this Court must affirm the termination of her parental rights.

## III.    Conclusion

For the above reasons, we affirm the trial court's order terminating the parental rights of Mother and Father over Adam.

AFFIRMED.

Panel Consisting of Judges ARROWOOD, COLLINS, and MURRY.

Report per Rule 30(e).